### WILLIAM H. WATERMAN, Appellee,

*vs.*

### ACHAS P. DUTTON et als., Appellants.

APPEAL IN EQUITY FROM THE RACINE CIRCUIT COURT.

Circuit courts in this state, sitting as courts of chancery, have power to award feigned issues of fact upon a proper case made.

The awarding or refusing a feigned issue rests in the sound discretion of the court.

An application for a feigned issue out of chancery should usually be made at the hearing.

It is premature to make such application before testimony taken, upon examination of the bill and answer; unless there arises upon the pleadings some question peculiarly matter *in pais*, and on the solution of which the case materially depends; as, the fact of forgery, usury, lunacy and the like.

THIS was an appeal from an order of the Circuit Court, denying the motion of the defendants for a feigned issue for the trial of facts.

The bill of complainant was in the nature of a bill for specific performance of a contract for the sale by the defendants to complainant of certain pier and warehouse property in the city of Racine ; and sets forth that in the month of February, 1855, the complainant had a pier, and the defendants also had a pier, in said city, and that by reason of the pier business being insufficient for the profitable employment of both, &c., the defendants submitted to complainant a written proposition for the sale of defendant's pier to complainant, for the sum of six thousand dollars, on terms to be agreed on ; they, the said defendants, to give bonds not to build another pier, or carry on the pier business for the term of five years, &c., which proposition was deposited with Henry T. Fuller, that complainant might have a few days to decide upon the same.

On the 14th of February, 1855, the defendants Dutton and Elisha Raymond (the said Seneca Raymond being absent, but having agreed to abide by such arrangement for the sale as his

copartners might make), together with Marshall M. Strong and complainant, met at the office of Strong and Fuller in Racine, to complete the negotiations. Said Strong then produced the written proposition and reading it aloud, remarked that the terms of payment were not definitely fixed, and inquired of defendants, if complainant should procure discharges of two mortgages, one executed by the said Elisha and the said Seneca to one Latham Cornell, and the other to Charles R. Cornell, and should deliver the same to them, it would be a satisfactory payment; and the said Dutton and the said Elisha both replied that it would; and as the said mortgages were supposed to amount to about $6,400 (and were a lien upon the premises), said Dutton and Elisha agreed to refund to complainant the surplus over and above said $6,000, the purchase money of the pier. The said Strong, as agent and attorney of the complainant, then remarked that the complainant accepted, upon the terms of payment above stated, the proposition of the defendants for the purpose of obtaining the sole control of the commission and forwarding business, and did then and there absolutely and unconditionally, accept that part of the proposition of the defendants, whereby they agreed to sell their premises and appurtenances for the sum of six thonsand dollars, and to give complainant their bond not to carry on said business, as aforesaid; and at the request of the complainant and the defendants, the said Strong proceeded to draft an article of agreement of said sale, which was signed by said complainant and said Dutton and Raymonds, and dated said 14th day of February, 1855, in and by which said defendants agreed to sell to complainant the said pier, warehouse, lots, &c., for the sum of $6,000, to be paid by procuring a release for that amount of the mortgages aforesaid, and said complainant also agreed to assume a contract made by defendant with George Fellows for 16,000 feet of plank, and also to take 100 spiles contracted by Dutton and Raymonds, at contract prices. And the bill further alleges, that by the carelessness, oversight and neglect of said Strong, all that part of said proposition relating to defendants giving bonds not to carry on the pier business, nor build another pier during five years, was overlooked and left out of said contract.

The bill further states that complainant entered into possession of, and made repairs upon said pier, and procured said Strong to correspond with said mortgagees, who resided in New-York, in reference to procuring the said releases; and that on the 12th day of March, the said complainant tendered to said defendants said releases, in pursuance of said article of agreement, and requested said defendants to execute a conveyance of said real estate, and comply with said agreement on their part; but that said defendants refused to accept said releases and to perform said agreement, &c. The bill prays that said argument may be corrected so as to require the defendants to give bond not to carry on the pier business as aforesaid, and for general relief.

The defendant's answer admits the making of the said written proposition of sale, but denies that Seneca Raymond agreed to abide by any arrangement which should be made by Dutton and Elisha Raymond; admits the execution of the contract drawn by Strong, of the 14th of February, but denies that the said written proposition was, on that occasion, produced or referred to, or that the language took place as charged in the bill; denies that the proposition in writing entered into, or formed any part of the contract of the 14th of February, and particularly that part of said proposition, relating to defendants giving bonds not to carry on the pier business in Racine, and denies that that part of said proposition was omitted by neglect or carelessness on the part of said Strong.

The answer also avers, that by a mutual understanding at the time of making said contract, said complainant was to have ten days to fulfill the same on his part, and that it was upon this understanding that defendants signed the same; that on the 6th of March, defendants served on complainants a notice in writing that they then were ready to perform said contract on their part, by the conveyance of the premises, and that they had executed deeds for that purpose, and required him immediately to fulfill said contract on his part; in default of which they should, and did declare said contract forfeited, &c.; and that ten days was a reasonable time in which to procure the said releases of said mortgages.

General replication was filed to the answer.

The defendants then filed the following motion, viz :

"And now come the said defendants, by Horace T. Sanders, their solicitor, and move the court now here to direct and order a feigned issue for trial of the following facts :

1. Whether the proposition mentioned and set forth in the complainant's bill of complaint, dated the 9th day of February, 1855, was deposited with one Henry T. Fuller, that the said complainant might have a few days to decide upon the same ?

2. Whether the said Seneca (Seneca Raymond, one of the defendants), then and there said, that any arrangement which should be finally made by the said Dutton and said Elisha, he would abide by.

3. Whether, on the 14th day of February, 1855, the said Seneca then being absent, the said Dutton, said Elisha, the complainant, and said Strong met at the office of Strong & Fuller, for the purpose of completing said negotiation.

4. Whether the said Strong, then and there taking said written proposition in his hand, and reading the same over aloud, in the presence of the parties, remarked that the terms of payment were not definitely fixed.

5. Whether the said Strong, then and there asked the said Dutton and Elisha Raymond, if the complainant should procure discharges of two mortgages, executed by the said Elisha and the said Seneca, to one Latham Cornell, and to one Charles Cornell, and should deliver the same to them, it would be a satisfactory payment.

6. Whether, then and there, in answer to such inquiry, the said Dutton and Elisha both replied it would be satisfactory.

7. Whether, then and there, the said Elisha and Dutton agreed that whatever balance there should be on said mortgage, over $6,000, they would pay to the said complainant.

8. Whether the said Strong, as the agent and attorney of the said complainant, and in the complainant's presence, told said Elisha and Dutton, that the said complainant accepted, upon the terms of payment above stated, the proposition contained in the first paragraph of the said defendant's written proposition.

Waterman vs. Dutton et als.

9. Whether for the purpose of obtaining the sole control of said commission and forwarding business, the complainant did then and there, absolutely and unconditionally, accept that part of the proposition of the defendants, whereby they agreed to sell said premises and appurtenances for $6,000, and give the said complainant their bond not to carry on the said business as aforesaid.

10. Whether at the time the parties went to the office of Strong & Fuller the said proposition was produced or alluded to by either of the parties.

11. Whether the said Strong then and there remarked that they had concluded to purchase said warehouse and pier, provided they could agree upon the terms of payment.

12. Whether the said Strong then and there remarked that the said complainant would be obliged to secure, by mortgage on both of said warehouses and piers, which Cornell might not consider adequate security, and might refuse to make any arrangement.

13. Whether the said Strong then and there remarked, that in case the arrangement could not be made with said Cornell, the said complainant could re-purchase.

14. Whether the said proposition formed or entered into any part of the contract of the 14th of February, &c.

Which said motion, after argument by counsel, was overruled and denied by the court. From which order, denying said motion, the defendants appealed.

*H. T. Sanders* and *Wm. P. Lyon*, for appellants.

1. The court may direct an issue of fact to be tried by a jury. *Revised Statutes*, p. 417, § 31.

2. Although the Court of Chancery, in the exercise of a sound discretion, *may* decide matters of fact, without the intervention of a jury; yet, if important rights are depending upon mere questions of fact, it is proper to award a feigned issue. *Apthorp vs. Comstock et al.*, 2 *Paige C. R.* 482; *S. C.*, 1 *Hopkins' R.* 143; *S. C.*, 8 *Cow. R.* 386. *Vide, also,* 8 *Paige* 452; *Jeremy's Eq.* 295, 299; *Seymour vs. Delancy*, 1 *Hopkins' C. R.* 436.

3. A refusal to grant a feigned issue, when directly applied for, and where, in the exercise of a sound discretion, the court should have directed such issue, is good ground of appeal. *Townsend vs. Graves*, 3 *Paige C. R.* 453 ; 3 *Wis.* 379 ; 2 *Daniel's Ch. Pr.* 1290, 1293–4.

*Henry Fuller* and *J. W. Carey*, for appellees.

1. Issues should be directed only in those cases where there is a want of evidence, or the testimony is contradictory, and so nearly balanced, that it is necessary to have an open and rigid cross-examination of witnesses before a jury. *Whaley vs. Whaley*, 3 *Bligh's P. C.* 16 ; *Townsend vs. Graves*, 3 *Paige Ch. R.* 453–7 ; *Nichol vs. Vaughan*, 2 *Dow & Clarke*, 429 ; 5 *Bligh*, *N. S.* 504 ; *Earl of Winchelsea vs. Garretty*, 1 *M. & K.* 253 ; 7 *Eng. Ch. R.* 30.

2. The granting or refusing an issue, except in the case of an heir at law, and some few other and special cases, is entirely a matter of discretion in the court, which it will not exercise without due deliberation ; and if there is not a gross abuse of that discretion, the appellate court cannot interfere to reverse the decision of the inferior court. 2 *Daniel's Ch. Pl. & Pr.* 730, *original paging ; R. S.* 417, § 31 ; *Dale vs. Rosevelt*, 6 *John. Ch. R.* 255–6 ; *Fisher vs. Lord & Graves*, 1 *M'Clel. & Y.* 362 ; *Collins vs. Sawyer*, 4 *Br. P. C.* 692.

5. The application for a feigned issue was prematurely taken. 2 *Daniel's Ch. Pl. & Pr.* 1294 (*Perkins' Ed.*) ; *Fallagar vs. Clarke*, 18 *Ves.* 481.

*By the Court*, COLE, J. We are of the opinion that the Circuit Court very properly denied the motion for a feigned issue in this cause. At the same time we think there can be no doubt, even in the absence of all statutory provisions upon the subject, that the circuit courts of this state have the power to award a feigned issue in a proper case, and when the application therefor is properly made. Such a power is necessarily inci-

dent to the general jurisdiction of our courts of equity. Although the granting of a feigned issue is said to be a matter resting in the sound discretion of the court, yet this discretion is exercised almost as a matter of course, in a certain class of cases, by the English Court of Chancery, and by equity courts in this country.

In the present case, before the hearing, and even before any considerable portion of the testimony was taken, an application was made to the court below for an issue to try matters of fact embraced in some seventeen distinct points or propositions. And it is very evident that many of these facts proposed to be thus tried, are wholly immaterial to the merits of the case.

The counsel for the appellant contends that these issues are indivisible, and must be submitted to a jury, if at all, as one entire proposition. We do not so regard them. But in examining them we do not find but one issue which we think is proper, or of a character suitable to be submitted to a jury; and that is the issue in reference to an alleged mistake in the contract; and it may not be necessary to submit even that issue to a jury, unless the evidence upon that point should be so unsatisfactory, or so conflicting that the court should desire the intervention of a jury to decide it. It has been suggested by the counsel for the appellants, that it was very desirable to take the opinion of a jury upon the other points. But such a practice is subject to great inconvenience and objection. For we have already stated that we considered many of the issues entirely irrelevant to the real facts in controversy; and indeed that all the issues, except the one above indicated, not of a character suitable to be submitted to a jury, unless it is necessary to put the whole case to the jury as a common-law action. It has not been thought necessary to refer all the facts which may be involved in a suit in equity to a jury for determination; and it probably will not be done until all distinction between suits at law and chancery is abolished. To refer all these issues in this case to a jury would in our judgment only tend to delay and embarrass the cause, increase the expense, and result in no possible advantage to any of the parties concerned.

Moreover, we think this application for a feigned issue was premature. Such applications are usually made at the hearing. *See 2 Daniel's Ch. Pr.* 1293–4, *and cases cited in the notes.* Until the hearing, it could not be determined whether or not an issue was necessary to try the fact as to there having been a mistake in drawing the contract. The proof upon that point might be clear, uncontradicted and conclusive; or the allegations of mistake might be entirely unsupported by the evidence. This was not one of those cases where the court could see, upon an examinction of the bill and answers, that an important fact was asserted or denied, for instance, like that of forgery, usury, or lunacy in case of a will, or some defence of that kind, that it would be necessary to take the opinion of a jury upon, and to save time and expedite the cause, might order an issue before the hearing.

The order of the Circuit Court affirmed, with costs.